## APPEAL OF NORFOLK KNITTING MILLS CORPORATION.

Docket No. 4341.   Promulgated December 14, 1926.

1. RETURN FOR FRACTIONAL YEAR.—The petitioner's income-tax liability for the period of six months ended June 30, 1918, should be computed on the basis of a separate return for that fraction of a year. Following *Appeals of Henry D. Weed*, 2 B. T. A. 84, and *Coghlin Electric Co.*, 3 B. T. A. 1071.

2. COMBINATION OF RETURNS FOR TWO SHORT PERIODS.—The making of separate returns by the petitioner, one for the first six months of 1918, and one for the second six months of 1918, were in accordance with the law and the petitioner's accounting methods, and there is no provision of law or of the regulations requiring that the two returns should be combined into one.

3. NET LOSS, ALLOCATION OF.—The petitioner's net loss for the year 1919 should be credited first against the net income of the last six months of the year 1918 and the balance against the net income of the first six months of 1918.

*Elmer O. Gray, C. P. A.*, for the petitioner.
*Willis D. Nance, Esq.*, for the Commissioner.

This is an appeal taken from a determination respecting income and profits taxes for the year 1918 and the finding of a deficiency of $236.79 for the last six months of said year and an overassessment for the first six months. The petition asserts three errors committed by the Commissioner as follows:

(1) That the method of computing income-tax liability for the six-month period ended June 30, 1918, was erroneous.

(2) That the Commissioner now refuses to permit the petitioner to combine two separate returns made for six-month periods of the year 1918 in one calendar year return.

(3) That the Commissioner erroneously credited a 1919 net loss against income of the period from July 1, 1917, to June 30, 1918.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of New Hampshire, having an office at Littleton in that State and another office in association with William Iselin & Co. in New York City.

For some years prior to 1918 the petitioner had had an established practice of keeping and closing its books of account on the basis of fiscal years ending June 30 of each year. All of the capital stock of the petitioner and also all of the capital stock of another corporation, known as the Atlantic Realty Corporation, was owned by William Iselin & Co., a partnership which kept its books and closed its accounts on the basis of calendar years.

Under the Department regulations effective respecting excess-profits taxes for the year 1917, the said William Iselin & Co., the Atlantic Realty Corporation, and this petitioner were, by agreement between the Commissioner and the said parties, permitted to have their liability to excess-profits taxes computed on the basis of a consolidated return. The income of the petitioner for the calendar year 1917 was ascertained by taking one-half of its income for the twelve-month period ended June 30, 1917, and adding thereto one-half of the income for the period from July 1, 1917, to June 30, 1918, thus producing a basis for computing this petitioner's tax liability for the calendar year 1917.

The assets and the business of the Atlantic Realty Corporation were taken over in June, 1918, by this petitioner.

According to its regular accounting practice, the petitioner closed its books as of June 30, 1918, and thereafter made an income and profits-tax return for the six months from January 1 to June 30, 1918. Sometime later it applied for and received from the Commissioner permission to change its accounting periods from fiscal to calendar years, and in pursuance thereof it again closed its books of account as of December 31, 1918, and made an income and profits-tax return for the said six months from July 1 to December 31, 1918. For the year 1919 and subsequent years the petitioner has kept its accounts and made its income-tax returns on the basis of calendar years.

For the six-month period ended December 31, 1918, the petitioner's net income as adjusted by the Commissioner was $11,477.40. For the calendar year 1919 it is admitted that the petitioner sustained a net loss of $21,530.26.

### OPINION.

TRUSSELL: 1. When the petitioner, in conjunction with its associated organizations, joined in a consolidated excess-profits-tax return for the calendar year 1917, it was then for all income and profits-tax purposes upon a calendar year basis and its liability for the year 1917 was thus closed and settled. The Revenue Act of 1918 required corporations to make income-tax returns on the basis of their established accounting periods. It was, therefore, necessary for this petitioner to make an income-tax return for the six months from January 1 to June 30, 1918, and such return should be made as a return separate and distinct from any prior year or period, in accordance with decisions of the Board in the *Appeals of Henry D. Weed*, 2 B. T. A. 84, and *Coghlin Electric Co.*, 3 B. T. A. 1071, and during the same six-month period it should have its income and profits taxes computed on the basis of a return consolidated with the Atlantic Realty Corporation.

2. Petitioner's returns for the six months ended June 30, 1918, and the following six months ended December 31, 1918, appear to have been properly made in accordance with its then established periods of accounting, and there is no provision of law or of Department regulations which can be interpreted to require the combination of such separate returns into one calendar-year return.

3. The Revenue Act of 1918 was enacted on February 24, 1919, a little more than three months after the practical closing of the World War. During the period of that war substantially all commodity prices had risen to heights theretofore unknown in this country, and it was the general belief that such conditions could not continue and that there would quickly follow a great deflation in commodity values. In recognition of this situation, and conscious of the fact that all manufacturing and mercantile businesses had closed the year 1918 with inventories valued at war prices, and anticipating that the coming deflation would result in severe losses, Congress put into the Revenue Act of 1918 section 204, defining the term "net loss" and providing, in subdivision (b) thereof, as follows:

If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by Title III for such preceding taxable year shall be redetermined accordingly. * * *

We are here concerned with the application of the provisions last above quoted to the situation in which this petitioner finds itself. The purpose of Congress in enacting this provision seems too obvious to be a matter of debate; its purpose was to provide that taxpayers suffering losses during the period between November 1, 1918, and December 31, 1920, were to be allowed relief from taxation by crediting such losses first against 1918, when taxpayers were believed to have enjoyed the benefit of war prices and to have made large profits and carried proportionately heavy burdens of income and profits taxes, and, in the event that profits of 1918 were insufficient to absorb the loss, the balance thereof, or so much of it as possible, should be absorbed by profits of the year 1920, when it was expected that business conditions and commodity prices might again become normal.

The petitioner's net loss was sustained during the calendar year 1919, which was all within the period prescribed by the Act, and we are of the opinion that a proper application of said Act to this petitioner's situation requires that so much of the 1919 net loss as can be absorbed by the net profits of the six months from July 1 to December 31, 1918, should be so allocated, and that the balance of said net loss should be credited against the gains and profits of the period from January 1 to June 30, 1918.

> *The deficiency, or overassessment, as the case may be, will be determined upon 15 days' notice pursuant to Rule 50, and judgment will be entered thereon in due course.*